No. 22-1718

IN THE
# United States Court of Appeals for the Ninth Circuit

DR. SUNIL AGGARWAL, MD, PHD; ADVANCED INTEGRATIVE MEDICAL
SCIENCE INSTITUTE, PLLC,
*Petitioners,*

**v.**

U.S. DRUG ENFORCEMENT ADMINISTRATION; ANNE MILGRAM, IN HER
OFFICIAL CAPACITY AS ADMINISTRATOR OF THE U.S. DRUG
ENFORCEMENT ADMINISTRATION; AND MERRICK GARLAND, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL,
*Respondents.*

## BRIEF OF AMICUS CURIAE MICHAEL FRATKIN, M.D., F.A.A.H.P.M. IN SUPPORT OF THE PETITIONERS AND GRANTING THE PETITION

Karen Luong
Kimberly Chew
Natasha Sumner
HUSCH BLACKWELL LLP
355 South Grand Ave., Ste. 2850
Los Angeles, CA 90071
(213) 337-6559
karen.luong@huschblackwell.com
kimberly.chew@huschblackwell.com
natasha.sumner@huschblack-
well.com

Danny Solomon
HUSCH BLACKWELL LLP
1801 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
(202) 378-2300
danny.solomon@huschblack-
well.com

*Counsel for* Amicus Curiae

February 15, 2023

1

**CORPORATE DISCLOSURE STATEMENT**

Amicus Curiae is an individual that does not have a parent corporation or issue stock.

# TABLE OF CONTENTS

Page

Corporate Disclosure Statement ............................................................... 2

Table of Contents ..................................................................................... 3

Table of Authorities ................................................................................. 5

Identity and Interest of Amici Curiae ..................................................... 9

Introduction ............................................................................................ 16

Argument ................................................................................................ 17

I.    Rescheduling psilocybin would allow patients with life-threat-
      ening conditions access under Right to Try laws ......................... 17

      A.    RTT laws provide investigational treatment options to pa-
            tients with life-threatening conditions .................................. 18

      B.    Psilocybin qualifies for use under Right to Try laws ........... 19

      C.    Although psilocybin qualifies as an EID, the DEA refused
            to accommodate Dr. Aggarwal's request .............................. 19

      D.    The DEA's refusal to initiate proceedings to reschedule
            psilocybin thwarts RTT's goal of allowing access to experi-
            mental treatment options .................................................... 20

II.   The DEA should reschedule psilocybin because it has an ac-
      cepted medical use ...................................................................... 22

      A.    Abundant scientific literature shows the potential for psil-
            ocybin therapy to aid terminally ill patients ...................... 22

      B.    The FDA twice designated psilocybin as a breakthrough

      therapy ................................................................... 28

    C.    Researchers have published standard-of-care guidelines for the therapeutic use of psilocybin .................................... 29

III.    The DEA's summary denial of the petition silences the most important voices: patients and the clinicians who treat them .......... 30

    A.    Clinicians can and will present a compelling case for rescheduling psilocybin if afforded the opportunity to do so in rulemaking proceedings .................................................... 30

    B.    Dying patients deserve to be heard ...................................... 32

Conclusion ............................................................ 33

Certificate of Compliance

Certificate of Service

## TABLE OF AUTHORITIES

Page(s)

**Statutes**

21 U.S.C. § 356 ................................................................................28

21 U.S.C. § 360bbb-0a ................................................................18, 19

21 U.S.C. § 811 ...............................................................19, 20, 21, 27

21 U.S.C. § 812 ..........................................................................17, 20

21 U.S.C. § 902 ................................................................................20

**Rules**

Fed. R. App. P. 29(a)(2) .....................................................................9

**Other Authorities**

164 Cong. Rec. H4355-01 .................................................................18

Alan K. Davis et al., *Effects of Psilocybin-Assisted Therapy on Major Depressive Disorder: A Randomized Clinical Trial*, 78 JAMA Psychiatry 481 (2021)..............................................................23

Alexander B. Belser et al., *Patient Experiences of Psilocybin-Assisted Psychotherapy: An Interpretative Phenomenological Analysis*, 57 J. Humanistic Psychology 1 (2017)..............................................25, 26

Benjamin Kelmendi et al., *The Role of Psychedelics in Palliative Care Reconsidered: A Case for Psilocybin*, 30 J. Psychopharmacology 1212 (2016) ..........................................................................24

Brian T. Anderson et al., *Psilocybin-Assisted Group Therapy for Demoralized Older Long-Term AIDS Survivor Men: An Open-Label Safety and Feasibility Pilot Study*, 27 EClinicalMedicine 1 (2020) ....27

Charles S. Grob et al., *Pilot Study of Psilocybin Treatment for Anxiety in Patients with Advanced-Stage Cancer*, 68 Archives Gen. Psychiatry 71 (2011) ..........................................................................23

Chia-Ling Yu et al., *Psilocybin for End-of-Life Anxiety Symptoms: A Systematic Review and Meta-Analysis*, 18 Psychiatry Investigation 958 (2021) ............................................................................27

*COMPASS Pathways receives FDA Breakthrough Therapy designation for psilocybin therapy for treatment-resistant depression*, COMPASS Pathways (Oct. 23, 2018), https://compasspathways.com/compass-pathways-receives-fda-breakthrough-therapy-designation-for-psilocybin-therapy-for-treatment-resistant-depression/..............................................................................28

Ekin Secinti et al., *The Relationship Between Acceptance of Cancer and Distress: A Meta-Analytic Review*, 71 Clinical Psych. Rev. 27 (2019) ....................................................................................22

Eric Kast, *LSD and the Dying Patient*, 26 Chi. Med. Sch. Q. 80 (1966) .....................................................................................28

Eric C. Kast & Vincent J. Collins, *Study of Lysergic Acid Diethylamide as an Analgesic Agent*, 43 Anesthesia Analgesia 285 (1964) .....................................................................................26

Gabrielle I. Agin-Liebes et al., *Long-Term Follow-Up of Psilocybin-Assisted Psychotherapy for Psychiatric and Existential Distress in Patients with Life-Threatening Cancer*, 34 J. Psychopharmacology 155 (2020) ..................................................................................25

Ira Byock, *Taking Psychedelics Seriously*, 21 J. Palliative Med. 417 (2018) .....................................................................................22

6

Jeffrey Guss et al., Y*ale Manual for Psilocybin-Assisted Therapy of Depression* (2020), https://psyarxiv.com/u6v9y/ .................................... 29

John D. McCorvy et al., *Psilocybin for Depression and Anxiety Associated with Life-Threatening Illnesses*, 30 J. Psychopharmacology 1209 (2016) ........................................................ 24

Matthew W. Johnson, William A. Richards & Roland R. Griffiths, *Human Hallucinogen Research: Guidelines for Safety*, 22 J. Psychopharmacology 603 (2008) ........................................................ 29

Michael W. Jann, *Psilocybin Revisited: The Science Behind the Drug and Its Surprising Therapeutic Potential*, 38 Psychiatric Times (Mar. 9, 2021), https://www.psychiatrictimes.com/view/psilocybin-revisited-science-behind-drug-surprising-therapeutic-potential ........ 19

Penny Patterson, *FDA grants Breakthrough Therapy Designation to Usona Institute's psilocybin program for major depressive disorder*, Usona Inst. (Nov. 22, 2019), https://www.usonainstitute.org/press-release/fda-grants-breakthrough-therapy-designation-to-usona-institutes-psilocybin-program-for-major-depressive-disorder ............ 28

*Psilocybin Study Report to the Connecticut State Legislature*, Conn. Dep't Mental Health and Addiction Services (February 22, 2022), https://portal.ct.gov/-/media/DMHAS/Publications/Psilocybin-Study-Report-Final-022322.pdf ......................................................... 29

Rebecca H. Lehto, Megan Miller, & Jessica Sender, *The Role of Psilocy-bin-Assisted Psychotherapy to Support Patients With Cancer: A Critical Scoping Review of the Research*, 40 J. Holistic Nursing 265 (2022) ............................................................................. 24

Roland R. Griffiths et al., *Psilocybin Produces Substantial and Sustained Decreases in Depression and Anxiety in Patients with Life-Threatening Cancer: A Randomized Double-Blind Trial*, 30 J. Psychopharmacology 1181 (2016) ...................................................... 23

Sarah Shnayder et al., *Psilocybin-Assisted Therapy Improves Psycho-Social-Spiritual Well-Being in Cancer Patients*, 323 J. Affective Disorders 592 (2023) ........................................................... 26

Stephen Ross et al., *Acute and Sustained Reductions in Loss of Meaning and Suicidal Ideation Following Psilocybin-Assisted Psychotherapy for Psychiatric and Existential Distress in Life-Threatening Cancer*, 4 ACS Pharmacology & Translational Sci. 553 (2021) ........................................................... 26, 27

Stephen Ross et al., *Rapid and Sustained Symptom Reduction Following Psilocybin Treatment for Anxiety and Depression in Patients with Life-Threatening Cancer: A Randomized Controlled Trial*, 30 J. Psycho-pharmacology 1165 (2016) .................................... 23

Tara C. Malone et al., *Individual Experiences in Four Cancer Patients Following Psilocybin-Assisted Therapy*, 9 Frontiers Pharmacology 1 (2018) ........................................................ 25

Thomas C. Swift et al., *Cancer at the Dinner Table: Experiences of Psilocybin-Assisted Psychotherapy for the Treatment of Cancer-Related Distress*, 57 J. of Humanistic Psych. 488, 488–89 (2017) ....... 24

Yvan Beaussant & Kabir Nigam, *Invited Commentary: Expending Perspectives on the Potential for Psychedelic-Assisted Therapies to Improve the Experience of Aging*, Am. J. Geriatric Psychiatry (Sept. 27, 2022) ................................................................. 31, 32

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

Amicus Curiae **Michael Fratkin, M.D., F.A.A.H.P.M.,** is a Hospice and Palliative Medicine Physician. He is the Founder-of ResolutionCare, Medical Director at Heart of the Redwoods Community Hospice, and Consultant at FireWater Partners. Dr. Fratkin has spent twenty-two years in Hospice and Palliative Medicine as a community physician and hospice medical director. He built an inpatient palliative care consultation service at a rural hospital and initiated a clinic-based palliative care program embedded in a community cancer program. In 2014, he launched the country's first technology-enabled home palliative care program, focusing on the poor and disregarded population in rural communities.

### A.    Individual Amici

The following individual amici are all distinguished end-of-life clinicians who join with Dr. Fratkin to support the rights of terminally ill patients:

- **Agapi Ermides, D.O.,** is a Hospice and Palliative Internal Medicine Doctor.

---

[1] Under Fed. R. App. P. 29(a)(2), this brief is filed with the consent of all parties. No counsel for any petitioner or respondent authored this brief in whole or part, and no person or entity other than amici, their members, or counsel, made any monetary contribution for the preparation or submission of this brief.

- **Akanksha Sharma, M.D.,** is a Neurologist, Neuro-oncologist, and Hospice/Palliative Medicine Specialist at the Pacific Neuroscience Institute.

- **Brian Gans, M.D.,** is a Palliative Medicine/Supportive Care and Survivorship Physician at the Dignity Health – Cancer Institute at St. Joseph's Hospital and Medical Center.

- **Brian D. Madden, M.D.,** is a Hospice and Palliative Medicine Physician and Medical Director of the Palliative Care Program at Providence Saint John's Health Center.

- **Catherine Bree Johnston, M.D.,** is a Palliative Care Physician, Director for Skagit Regional Health, and a Professor of Medicine at the University of Arizona College of Medicine.

- **Craig Blinderman, M.D., M.A., F.A.A.H.P.M.,** is an Associate Professor of Medicine and the Director of the Adult Palliative Medicine Service at the Columbia University Irving Medical Center and Fellowship Director of the Bi-Campus (Columbia and Cornell) HPM Fellowship Program.

- **David M. Steinhorn, M.D., F.A.A.P.,** is a Pediatric Palliative Care Consultant and Medical Director at Capital Caring Health.

- **Erica Leonard, M.D.,** is a Palliative Care Physician at Johns Hopkins Bayview Medical Center.

- **Greg Pelc, M.D.,** is a Palliative Medicine Physician.

10

- **Howard Homler, M.D., F.A.C.P.,** is a Hospice & Palliative Medicine Specialist.

- **Ilan Bernstein, M.D.,** is a Hospice & Palliative Medicine Specialist and Assistant Clinical Professor in the Department of Medicine at the University of Hawaii John A. Burns School of Medicine.

- **Ira Byock, M.D., F.A.A.H.P.M.,** is a leading palliative care physician, author, and public advocate for improving care through the end of life. He is the Founder of the Institute for Human Caring at Providence St. Joseph Health. Dr. Byock is the Active Professor Emeritus of Medicine and Community & Family Medicine at the Geisel School of Medicine at Dartmouth. He served as Director of Palliative Medicine at Dartmouth-Hitchcock Medical Center in Lebanon, New Hampshire, from 2003 through July 2013. Dr. Byock has been involved in hospice and palliative care since 1978. His research has contributed to conceptual frameworks for the lived experience of illness that encompasses a continuum from suffering to well-being, related measures for subjective quality of life during illness, and effective life-completion counseling methods. From 1996 to 2006, he directed Promoting Excellence in End-of-Life Care, a national Robert Wood Johnson Foundation program that developed prototypes for concurrent

11

palliative care of people with life-threatening conditions. He is a past president of the American Academy of Hospice and Palliative Medicine.

- **Jeffrey A. Singer, M.D., F.A.C.S.,** is a Senior Fellow at the Cato Institute.

- **Jennifer Eitingon, M.D.,** is a Palliative Care and Hospice Physician at Johns Hopkins and Gilchrist.

- **Jonathan M. Fields, D.A.O.M.,** is a primary care provider and public speaker who operates an integrative medicine practice in South Florida specializing in preventive and mental health. Dr. Fields has experience working with trauma survivors, including, but not limited to, suicidal teenagers and veterans, with patients battling serious diseases ranging from autoimmune to cancer, and with senior citizens. Dr. Fields advocates for eligible patient access to investigational treatment options under state and federal Right To Try laws. Dr. Fields is represented in this action by Daniel T. McKillop, Esq. of Scarinci Hollenbeck, LLC, and Joseph M. Shapiro, Esq. of Middlebrooks Shapiro, P.C.

- **John Mulder, M.D., F.A.A.H.P.M., H.M.D.C.,** is Executive Director of the Trillium Institute; Associate Professor and Associate Chair, Department of Family Medicine; Director of the Division of Palliative Medicine, Michigan State University College of

Human Medicine; Director of the Trinity Health Grand Rapids Hospice and Palliative Medicine Fellowship Program; and a Recipient of the 2019 Palliative Medicine Community Leadership Award by the American Academy of Hospice and Palliative Medicine.

- **Judith R. Gordon, Ph.D.,** is a Licensed Psychologist in the State of Washington; Clinical Professor Emeritus in the Department of Psychology, University of Washington; and Former Board Member & Board Secretary, Board of Directors - End of Life Washington.

- **Karl Steinberg, M.D., C.M.D., H.M.D.C., H.E.C.-C.**, is Immediate Past President, AMDA–The Society for Post-Acute and Long-Term Care Medicine; President, National POLST Collaborative; Member, National Quality Forum Standing Committee on Geriatrics and Palliative Care; and Medical Director, Hospice by the Sea.

- **Kristina Conner, M.D., H.M.D.C.**, is the Chief of Palliative Care at Exeter Hospital.

- **Maggie Carpenter, M.D.,** is the President of Nightingale Medical.

13

- **Melissa Chubbuck, M.D.,** is a Hospice and Palliative Care Physician and Medical Director at MultiCare Home Health and Hospice.

- **Michael Gabriel, M.D.,** is a Hospice & Palliative Medicine Fellow at the University of California – San Diego/Scripps.

- **Michael W. Rabow, M.D.,** is the Helen Diller Family Chair in Palliative Care, Professor of Clinical Medicine and Urology, and Associate Chief of Education & Mentoring in the Division of Palliative Medicine, University of California, San Francisco.

- **Molly Collins, M.D.,** is an Adjunct Associate Professor of Medicine, Supportive Oncology, and Palliative Care Program at the Fox Chase Cancer Center, Lewis Katz School of Medicine at Temple University.

- **Nadav Klein, M.D.,** is a Hospice and Palliative Medicine Clinical Fellow at the New York-Presbyterian Columbia University Irving Medical Center and Weill Cornell Medicine.

- **Sumeet Kumar, Ph.D.,** is a clinical psychologist specializing in palliative care for nearly twenty-five years. He has been employed by the Memorial Healthcare System since 2010 and has worked with cancer patients for his entire career.

- **Sumi Misra M.D., MPH, F.A.A.H.P.M.,** is an Associate Professor of Medicine at Vanderbilt University Medical Center; Chief,

14

Palliative Medicine at Tennessee Valley Heath Care System in Nashville, TN; Associate Director of Education and Evaluation at the Geriatric Research Education and Clinical Center; and Director of the Palliative Medicine Fellowship Program, Vanderbilt University Medical Center (VUMC).

- **Yvan Beaussant, M.D., M.Sc.,** is a Hematologist and Palliative Care Physician and an Instructor in Medicine at Harvard Medical School and in the Department of Psychosocial Oncology and Palliative Care, Dana Farber Cancer Institute.

## B.    Organizational Amici

This organizational amicus joins with Dr. Fratkin to support the rights of terminally ill patients:

- **The Osteopathic Center for Education and Nutrition** ("OCEAN") is an osteopathic medical practice operated by Evan Rubin, D.O., an Osteopathic Physician board certified in Family Medicine and Osteopathic Manipulative Medicine. Dr. Rubin has over twenty years of experience working in urgent care, private practice, and home-based medicine. He is devoted to his patients and teaching Osteopathic principles to other physicians and students. OCEAN employs a hands-on approach to its treatments and considers a patient's medical and surgical history, nutrition, hydration,    exercise,    sleep,    work    environment,    home

15

environment, and family dynamics. OCEAN is represented in this action by Daniel T. McKillop, Esq. of Scarinci Hollenbeck, LLC, and Joseph M. Shapiro, Esq. of Middlebrooks Shapiro, P.C.

## INTRODUCTION

The U.S. Drug Enforcement Agency's refusal to start proceedings to consider rescheduling psilocybin has real-life consequences for terminally ill patients—the most vulnerable among us. *Amici* cannot stand idle while the DEA silences patients who deserve to—who have a statutory right to—be heard on issues that affect their life and death. The DEA's action to preempt public discussion on this potentially revolutionary medical treatment violates federal statutory law and is inhumane. *Amici* add their voice to the chorus of stakeholders, including veterans groups, who seek remand of this matter to the DEA for rescheduling proceedings.

Distinguished physicians and medical experts, such as the *amici*, will present clear scientific evidence at rescheduling proceedings that psilocybin has both an accepted and effective medical use. *Amici* will also offer evidence that the FDA has twice designated psilocybin as a "Breakthrough Therapy" in the last five years because it shows substantial improvement over other available therapies. *Amici* will also present evidence that psilocybin is widely accepted in the medical field and that physician associations have developed comprehensive professional guidelines for administering it to patients. This evidence proves that psilocybin

16

has both an accepted and effective medical use and must be made available to American patients battling life-threatening illnesses.

For these reasons, and for the reasons Petitioners set forth in their opening brief, *amici* ask the Court to grant Dr. Aggarwal's Petition, declare the DEA's rescheduling denial unlawful, and remand this matter to the DEA for reconsideration and initiation of rulemaking proceedings on rescheduling psilocybin from Schedule I to Schedule II of the Controlled Substances Act ("CSA").

## ARGUMENT

### I. Rescheduling psilocybin would allow patients with life-threatening conditions access under Right to Try laws.

Forty-one states and Congress have enacted right-to-try ("RTT") laws that allow patients with life-threatening illnesses who have exhausted all approved treatment options to access promising investigational drugs. Psilocybin is one such drug. Yet the DEA has refused Dr. Aggarwal access to psilocybin under the federal Right to Try Act, claiming (erroneously) that it lacks the authority to override psilocybin's Schedule I status under the CSA. *See* 21 U.S.C. § 812. The road need not end there. Rescheduling psilocybin to Schedule II—a process within the DEA's power—would skirt the DEA's self-created problem and make psilocybin accessible to physicians for patient treatment under RTT laws.

17

**A.    RTT laws provide investigational treatment options to patients with life-threatening conditions.**

Patients with life-threatening conditions deserve access to promising investigational drugs for therapeutic use. This declaration is not aspirational; it represents the "will of the American people." 164 Cong. Rec. H4355-01, H4356 (2018). After a wave of state RTT enactments, Congress enacted the Right to Try Act "[t]o open the door to innovative, experimental drugs for terminally ill patients without necessarily compromising the vital work and mission of [FDA]." *Id.* The federal RTT "establishe[d] national standards and rules by which investigational drugs may be provided to terminally ill patients," providing an exemption to permit the therapeutic use of unapproved drugs by terminally ill patients under specified conditions. 21 U.S.C. § 360bbb-0a(b) note, 132 Stat. 1374–75. In short, the RTT Act effectively "empower[s] terminally ill patients and their doctors who, together with the cooperation of the developers of potentially life-saving therapies, should be in charge of making a determination about their own course of treatment." *Id.* at H4360 (quoting the RTT Act's primary drafter). More specifically, the RTT Act empowers "[e]ligible patients" who have (1) been diagnosed with a life-threatening disease or condition, (2) exhausted approved treatment options and cannot participate in a clinical trial involving the eligible investigational

18

drug ("EID"), and (3) given informed consent for the drug to improve their remaining quality of life. 21 U.S.C. § 360bbb-0a(a)(1).

### B.    Psilocybin qualifies for use under Right to Try laws.

To qualify as an EID, a drug must (1) be unapproved, (2) have completed an FDA-approved Phase I clinical trial, and (3) be in ongoing and active drug development. *Id.* § 360bbb-0a(a)(2). These strict requirements ensure that only drugs with real potential are accessible for patients with no treatment options.

Psilocybin meets the criteria for an "eligible investigational drug" under the RTT Act. FDA-approved Phase 1 clinical trials have shown psilocybin to be "well tolerated." *See* Michael W. Jann, *Psilocybin Revisited: The Science Behind the Drug and Its Surprising Therapeutic Potential*, 38 Psychiatric Times (Mar. 9, 2021), https://www.psychiatrictimes.com/view/psilocybin-revisited-science-behind-drug-surprising-therapeutic-potential. Phase 2 trials are underway, and plans for Phase 3 are already in place. *Id.* Psilocybin passes the FDA's standards and shows significant, promising indications of effectiveness.

### C.    Although psilocybin qualifies as an EID, the DEA refused to accommodate Dr. Aggarwal's request.

When Dr. Aggarwal requested the DEA's authorization to obtain psilocybin for RTT use, the DEA refused. It denied Dr. Aggarwal's request, declaring that it lacks authority to waive the CSA, which classifies

19

psilocybin as a Schedule I controlled substance. *See* 21 U.S.C. § 811.[2] This refusal to accommodate Schedule I drugs under RTT raises a host of issues. But those are for another day. Real or imagined, the DEA need not be handcuffed by the CSA; the CSA also solves the problem—rescheduling.

### D. The DEA's refusal to initiate proceedings to reschedule psilocybin thwarts RTT's goal of allowing access to experimental treatment options.

The CSA classifies drugs and other substances into five "schedules" based on their potential for abuse, medical use, and safety. *See* 21 U.S.C. § 812. Schedule I drugs have a high potential for abuse, no accepted medical use, and no accepted safety for use. *Id.* § 812(b)(1)(A)–(C). Schedule II drugs, on the other hand, have "a currently accepted medical use in treatment . . . or a currently accepted medical use with severe restrictions." *Id.* § 812(b)(2)(B). Psilocybin is classified under Schedule I— no doubt based on the outdated view that it is neither safe nor effective for medical treatment. *Id.* § 812, Schedule I(c)(15).

Schedules are not—or, at least, should not—be set in stone. The DEA can reschedule drugs using a process that involves evaluating available scientific and medical evidence to determine the potential risks and

---

[2] The DEA need not have authority to waive the CSA—Congress required that the CSA's provisions yield to the Food, Drug, and Cosmetic Act's. *See* 21 U.S.C. § 902. In other words, Schedule I cannot override a patient's RTT rights.

benefits and to decide on the appropriate scheduling classification. *See* 21 U.S.C. § 811(a)–(c). This thorough process ensures that a drug does not needlessly stay in the wrong schedule, unavailable to physicians for patient treatment.

This Court need not look further than Dr. Aggarwal to appreciate the potential impact of the CSA rescheduling process. Despite overwhelming evidence of its efficacy and safety, psilocybin remains in Schedule I. Stuck there, the DEA uses psilocybin's classification as a shield to prevent access under RTT. Rescheduling psilocybin to Schedule II—based on psilocybin having a currently accepted medical use with severe restrictions—would remove the remaining barrier to access under RTT.

Yet with no statutory authority, the DEA summarily refused even to open a rescheduling proceeding. In other words, rather than consider removing the barrier to RTT, the DEA erected another one. This inexplicable refusal further thwarts the people's will to provide patients with life-threatening conditions access to promising investigational drugs under RTT. This Court should not allow the DEA to keep psilocybin locked away in Schedule I. It should remand and direct the DEA to begin proceedings to consider rescheduling psilocybin under Section 811(b). At the least, Dr. Aggarwal's patients—and all others who could benefit from psilocybin—deserve this shot.

II. **The DEA should reschedule psilocybin because it has an accepted medical use.**

A.    **Abundant scientific literature shows the potential for psilocybin therapy to aid terminally ill patients.**

Initiating rulemaking proceedings to reschedule psilocybin is important because psilocybin therapy with severe restrictions has an accepted medical use as shown through many scientific articles and peer-reviewed research, including clinical trials. Clinicians recognize that many cancer patients suffer from psychic distress, and at least one scientific paper has studied how accepting the cancer diagnosis is important to reduce this distress, noting that "acceptance of cancer may be important to target in interventions to reduce general and cancer-specific distress in cancer patients." *See* Ekin Secinti et al., *The Relationship Between Acceptance of Cancer and Distress: A Meta-Analytic Review*, 71 Clinical Psych. Rev. 27, 27 (2019). Indeed, treating this nonphysical suffering has been suggested to be life-extending. *See* Ira Byock, *Taking Psychedelics Seriously*, 21 J. Palliative Med. 417, 420 (2018). Many psilocybin-assisted psychotherapy studies show positive results in promoting rapid, substantial, and lasting relief from distress caused by end-of-life anxiety and showing that psilocybin has a legitimate role in palliative care.

Four randomized trials, all involving the administration of psilocybin together with psychotherapy, have shown promising results for the

limited use of psilocybin in a controlled setting. *See generally* Charles S. Grob et al., *Pilot Study of Psilocybin Treatment for Anxiety in Patients with Advanced-Stage Cancer*, 68 Archives Gen. Psychiatry 71 (2011); Roland R. Griffiths et al., *Psilocybin Produces Substantial and Sustained Decreases in Depression and Anxiety in Patients with Life-Threatening Cancer: A Randomized Double-Blind Trial,* 30 J. Psychopharmacology 1181 (2016); Stephen Ross et al., *Rapid and Sustained Symptom Reduction Following Psilocybin Treatment for Anxiety and Depression in Patients with Life-Threatening Cancer: A Randomized Controlled Trial*, 30 J. Psychopharmacology 1165 (2016) ("Ross I"); Alan K. Davis et al., *Effects of Psilocybin-Assisted Therapy on Major Depressive Disorder: A Randomized Clinical Trial*, 78 JAMA Psychiatry 481 (2021) ("Davis study"). A pilot study in 2011 established the feasibility and safety of administering moderate doses of psilocybin to patients with advanced-stage cancer and anxiety. *See* Grob, *supra*, at 71. The Griffiths and Ross studies in 2016 continued this work and provided strong evidence showing substantial decreases in depressive and anxious symptoms for patients with cancer-related anxiety that persisted for at least six months after a single treatment. *See* Griffiths, *supra*, at 1181; Ross I, *supra*, at 1165. These studies also demonstrated that a single dose of psilocybin, with proper support and conditions, effectively decreased depression and anxiety in cancer patients and increased quality of life and optimism. *See id.*

23

The Griffiths and Ross studies made a critical advancement in addressing the psychological suffering of the dying, which the scientific community recognized. *See generally* Benjamin Kelmendi et al., *The Role of Psychedelics in Palliative Care Reconsidered: A Case for Psilocybin*, 30 J. Psychopharmacology 1212 (2016); John D. McCorvy et al*., Psilocybin for Depression and Anxiety Associated with Life-Threatening Illnesses*, 30 J. Psychopharmacology 1209 (2016); Rebecca H. Lehto, Megan Miller, & Jessica Sender, *The Role of Psilocybin-Assisted Psychotherapy to Support Patients With Cancer: A Critical Scoping Review of the Research*, 40 J. Holistic Nursing 265 (2022).

Later studies extend these findings. A 2017 study described how following psilocybin-assisted therapy, thirteen cancer patients with clinically elevated anxiety associated with their diagnosis spoke of reconciliations with death, acknowledging cancer's place in life and emotional uncoupling from cancer. *See* Thomas C. Swift et al., *Cancer at the Dinner Table: Experiences of Psilocybin-Assisted Psychotherapy for the Treatment of Cancer-Related Distress*, 57 J. of Humanistic Psych. 488, 488–89 (2017). And a 2021 study focused on patients diagnosed with Major Depressive Diagnosis ("MDD"). *See* Davis, *supra*, at 481–489. 71% of the participants had a clinically significant response to the treatment, and 54% were in remission at four weeks post-treatment. *Id*. at 481. These results show that "psilocybin-assisted therapy produced a large, rapid

and sustained antidepressant effects in patients with MDD" and "expand the findings of previous studies involving patients with cancer and depression." *Id*. at 487.

Psylocibin treatment has also been shown to have positive long-term effects for cancer-related psychiatric distress beyond six months. *See generally* Gabrielle I. Agin-Liebes et al., *Long-Term Follow-Up of Psilocybin-Assisted Psychotherapy for Psychiatric and Existential Distress in Patients with Life-Threatening Cancer*, 34 J. Psychopharmacology 155 (2020). 71%-100% of the twenty-seven patients who received this therapy three to four years earlier reported positive life changes, reductions in anxiety, depression, hopelessness, and demoralization, and "rated it among the most personally meaningful and spiritually significant experience of their lives." *Id*. at 155.

Two more studies focusing on cancer patients after psilocybin treatment described how the psilocybin journey helped them reconcile with their cancer's alienating and traumatic experience, decreased their anxiety, and increased their sense of life purpose. *See* Tara C. Malone et al., *Individual Experiences in Four Cancer Patients Following Psilocybin-Assisted Therapy*, 9 Frontiers Pharmacology 1, 2 (2018). One patient explained that he had "less anxiety about my body and my sickness coming back, my cancer coming back," while another stated feeling "more contented and happy about my place in the world in all the things I'm doing."

*Id.* at 5; *see generally* Alexander B. Belser et al., *Patient Experiences of Psilocybin-Assisted Psychotherapy: An Interpretative Phenomenological Analysis*, 57 J. Humanistic Psychology 1 (2017). The researchers noted that the therapy "not only . . . [met] each person's psychological needs, they also helped them understand what their needs were" and that the therapy assisted patients in "achieving insight into the cause of their distress." Malone, *supra*, at 5.

These profound improvements in seriously ill patients treated with psychedelic substances have been reported since the 1960s. *See generally* Eric C. Kast & Vincent J. Collins, *Study of Lysergic Acid Diethylamide as an Analgesic Agent*, 43 Anesthesia Analgesia 285 (1964); Eric Kast, *LSD and the Dying Patient*, 26 Chi. Med. Sch. Q. 80 (1966). A recent study took a closer look at mechanistic underpinnings of psycho-social-spiritual changes in thirty cancer patients following treatment and found sustained improvements in connection, reflection, introspection, trust, and acceptance, corroborating the findings of earlier studies. *See* Sarah Shnayder et al., *Psilocybin-Assisted Therapy Improves Psycho-Social-Spiritual Well-Being in Cancer Patients*, 323 J. Affective Disorders 592, 592 (2023). Another study found that a single dose of psilocybin with therapy acutely relieved suicidal ideation in eleven patients with cancer-related anxiety and depression. *See* Stephen Ross et al., *Acute and Sustained Reductions in Loss of Meaning and Suicidal Ideation Following*

*Psilocybin-Assisted Psychotherapy for Psychiatric and Existential Distress in Life-Threatening Cancer,* 4 ACS Pharmacology & Translational Sci. 553, 553 (2021) ("Ross II").

Psilocybin-assisted psychotherapy has been applied to other patients suffering from distress. *See generally* Brian T. Anderson et al., *Psilocybin-Assisted Group Therapy for Demoralized Older Long-Term AIDS Survivor Men: An Open-Label Safety and Feasibility Pilot Study,* 27 EClinicalMedicine 1 (2020). Long-term AIDS survivors were chosen for study as they experience a high degree of demoralization, characterized by a sense of helplessness, hopelessness, loss of meaning and purpose in life, and traumatic loss. Similar to the results shown for cancer patients, the eighteen participants in this study showed robust, clinically meaningful improvement in self-reported demoralization from baseline at three months after the single administration of psilocybin. *Id.* at 1.

The scientific community has repeatedly shown through robust peer-reviewed studies that psilocybin, administered under carefully controlled settings, can effectively treat existential distress related to life-threatening diseases and conditions. *See generally* Chia-Ling Yu et al., *Psilocybin for End-of-Life Anxiety Symptoms: A Systematic Review and Meta-Analysis,* 18 Psychiatry Investigation 958 (2021). Psilocybin has an accepted medical use that the DEA should properly consider in a formal rulemaking proceeding. *See* 21 U.S.C. § 811(b).

27

**B.   The   FDA   twice   designated   psilocybin   as   a breakthrough therapy.**

A breakthrough therapy designation is one of four approaches the FDA uses to make drugs that treat serious or life-threatening diseases available as quickly as possible. *See* 21 U.S.C. § 356. The FDA makes a breakthrough therapy designation when "preliminary clinical evidence indicates that the drug may demonstrate substantial improvement on a clinically significant endpoint(s) over available therapies." *Id*. In 2018[3] and again in 2019,[4] the FDA designated psilocybin FDA as a breakthrough therapy for treatment-resistant and major depression. These designations by the FDA further establish the efficacy of psilocybin's use in controlled medical settings.

---

[3] *COMPASS Pathways receives FDA Breakthrough Therapy designation for psilocybin therapy for treatment-resistant depression*, COMPASS Pathways (Oct. 23, 2018), https://compasspathways.com/compass-pathways-receives-fda-breakthrough-therapy-designation-for-psilocybin-therapy-for-treatment-resistant-depression/.

[4] Penny Patterson, *FDA grants Breakthrough Therapy Designation to Usona Institute's psilocybin program for major depressive disorder*, Usona Inst. (Nov. 22, 2019), https://www.usonainstitute.org/press-release/fda-grants-breakthrough-therapy-designation-to-usona-institutes-psilocybin-program-for-major-depressive-disorder.

**C.    Researchers    have    published    standard-of-care guidelines for the therapeutic use of psilocybin.**

In 2008, researchers from Johns Hopkins published detailed guidelines for conducting clinical research on human subjects, including subject selection and session preparation, physical environment, and study personnel. *See* Matthew W. Johnson, William A. Richards & Roland R. Griffiths, *Human Hallucinogen Research: Guidelines for Safety*, 22 J. Psychopharmacology 603 (2008). These guidelines have become the "benchmark" to ensure the safe use of hallucinogens such as psilocybin. *See Psilocybin Study Report to the Connecticut State Legislature*, Conn. Dep't Mental Health and Addiction Services (February 22, 2022), https://portal.ct.gov/-/media/DMHAS/Publications/Psilocybin-Study-Report-Final-022322.pdf. In 2020, researchers at Yale University published a fifty-page manual specific to psilocybin, expanding on Johns Hopkins' use guidelines. *See* Jeffrey Guss et al., *Yale Manual for Psilocybin-Assisted Therapy of Depression* (2020), https://psyarxiv.com/u6v9y/.

These publications highlight the progress that psilocybin-assisted therapy has made in recent years. Psilocybin-assisted therapy is no longer an option that doctors must blindly administer based on their judgment. With published best practices, doctors can confidently provide the top-tier care they wish for their patients with life-threatening conditions.

29

### III. The DEA's summary denial of the petition silences the most important voices: patients and the clinicians who treat them.

Perhaps the most important message the *amici* carry to this Court is: Please let us not lose sight of the human cost of the DEA's refusal to act. Human dignity and suffering are at stake and stand to be affected by this Court's ruling. The goal of the petitioners and *amici* may be wrapped, necessarily, in administrative law arguments. But at the heart of it, this is about dying patients' physical and emotional suffering and their doctors' efforts to get them meaningful, effective treatment. This is about recognizing and honoring the voices that cannot be ignored in a debate of this magnitude.

The DEA's summary denial of the petition to reschedule muzzles the people who have firsthand, experiential knowledge of psilocybin therapy's use and impact: palliative care clinicians and patients. Opening rulemaking proceedings would allow the courts, rulemaking authorities, and the American public to hear those voices and consider evidence and argument from the people whose lives are most impacted by the DEA's refusal.

### A. Clinicians can and will present a compelling case for rescheduling psilocybin if afforded the opportunity to do so in rulemaking proceedings.

Clinicians operate on the front lines and witness firsthand the promise of psilocybin therapy to alleviate suffering and the human cost

30

of the DEA's obstructing access to promising investigational treatment. They can and will present evidence that psilocybin is a new tool to fill a notable gap in the palliative care toolbox: an effective therapy for relieving debilitating anxiety and depression.

> Severe psychological and existential suffering can rob people of feeling that life is worth living. A sense of unending help-lessness and hopelessness compels some to consider ending their lives. Suicide rates have risen 24% over the past two dec-ades and are highest among middle-aged and elderly adults, particularly men who may suffer most from feelings of de-pendency. Public health data from Oregon show that since im-plementation of the Death with Dignity Act, the large major-ity of patients who received prescriptions for lethal drugs were motivated by nonphysical suffering. Current or fear of future pain contributed in just 26.4% of cases, while loss of autonomy (91.4%), decreased ability to enjoy life (89.7%), and loss of dignity (77.0%) most often brought these people to con-template hastening their deaths.

*See* Byock, *supra*, at 418.

Studies examining the benefits of psilocybin therapy with end-of-life patients have shown acute and sustained reductions in suicidal idea-tion and despair. *See* Ross II, *supra*, at 2. Researchers have found that this is primarily because of the way that psychedelic-assisted therapy "facilitates a shift from avoidance to acceptance and cultivates a sense of openness that persists long after the acute effects of the drug subside . . . ." *See* Yvan Beaussant & Kabir Nigam, *Invited Commentary: Expending Perspectives on the Potential for Psychedelic-Assisted Therapies to*

31

*Improve the Experience of Aging*, Am. J. Geriatric Psychiatry (Sept. 27 2022), at 2. This effect is particularly profound in patients with end-of-life anxiety, where studies show "unprecedented effect sizes in the alleviation of existential distress related to loss of meaning and purpose in life." *Id.*

Lehto conducted a critical review using a scoping methodology to examine research evaluating psilocybin-assisted psychotherapy to address existential issues affecting mental health in patients with cancer:

> Psilocybin-assisted therapy was found to modify depression and anxiety symptoms, sustained at 6 months and 3.2- and 4.5-year posttreatment (Agin-Liebes et al., 2020; Griffiths et al., 2016)…Psilocybin-assisted therapy allows patients with cancer an opportunity to practice *being* with their difficult physical, emotional, and cognitive symptoms such as pain, distress, and lack of coherence, and to potentially reframe and even transcend these situations that are associated with on-going suffering.

*See* Lehto, *supra*, at 276–77.

The *amici* and other clinicians in their position have been prevented from presenting such evidence and request the opportunity to be heard in a rulemaking proceeding where they can testify to their professional experience.

**B.     Dying patients deserve to be heard.**

Dying patients deserve the dignity and respect that comes from the ability to choose the modality of their end-of-life treatment. Life-saving treatment can also be defined as treatment that saves the quality of the life one has left. When faced with the reality of their impending demise, the decisions patients make during these last months and weeks carry significance that should be respected and considered—not ignored. They will live out the consequences of the DEA's and this Court's decision, short as that time may be. They deserve to be heard, and a rescheduling proceeding would provide them that voice.

## CONCLUSION

The DEA's insistence that it cannot reschedule psilocybin absent FDA approval is erroneous. The scientific and medical community recognizes that psilocybin has an accepted medical use with severe restrictions. On this basis, the reclassification of psilocybin Schedule II is justified. *See also* Petitioners' Opening Brief at 35–36. In summarily refusing to open a rescheduling proceeding without seeking medical and scientific evaluations from agencies, including the U.S. Department of Health and Human Services or the Food and Drug Administration, many stakeholders were denied the opportunity to present evidence to show why rescheduling is appropriate. Given DEA's refusal to accommodate

33

Dr. Aggarwal's request for access under RTT (*see* Petitioners' Opening Brief at 1), rescheduling is all the more important. At a minimum, the Court should vacate DEA's final decision and remand with direction to initiate formal rulemaking proceedings.

Date: February 15, 2023.               Respectfully submitted,

                       By: */s/ Karen Luong*

                              Karen Luong
                              Kimberly Chew
                              Natasha Sumner
                              HUSCH BLACKWELL LLP
                              355 South Grand Ave., Ste. 2850
                              Los Angeles, CA 90071
                              (213) 337-6559
                              karen.luong@huschblackwell.com
                              kimberly.chew@huschblackwell.com
                              natasha.sumner@huschblackwell.com

                              Danny Solomon
                              HUSCH BLACKWELL LLP
                              1801 Pennsylvania Ave., NW
                              Suite 1000
                              Washington, DC 20006
                              (202) 378-2300
                              danny.solomon@huschblackwell.com

                              *Counsel for* Amici Curiae

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  22-1718

I am the attorney or self-represented party.

**This brief contains** 5,027 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Karen Luong    **Date** 2/15/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

This counsel certifies that on this 15th day of February, 2023, the foregoing was served on all counsel of record via the Court's CM/ECF System.


*/s/   Karen Luong*